UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| DELISA ANN ARVIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:16-cv-160-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting | ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

Plaintiff Delisa Ann Arvin brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.

1

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

On July 23, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB"), alleging disability as of November 30, 2012. [TR 148-56].

Plaintiff's claims were denied initially and on reconsideration. [TR 62-100]. On February 13, 2015, Administrative Law Judge ("ALJ") Tommye C. Mangus held an administrative hearing at Plaintiff's request. [TR 42-61, 101-02]. ALJ Mangus issued a written decision, denying Plaintiff's claim for benefits, on May 29, 2015. [TR 23-35].

At Step One of the disability determination process, ALJ Mangus found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [TR 25]. At Step Two, she concluded that Plaintiff had the following severe impairments: irritable bowel syndrome ("IBS"), history of gastroduodenitis, history of duodenal ulcer, dysthymia, and anxiety. [*Id.*].

At Step Three, ALJ Mangus determined that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 30-31]. In reaching this conclusion, ALJ Mangus found that Plaintiff's mental impairments did not meet the requirements of Listing 12.04 (depressive, bipolar, and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorders) because she had no restrictions in activities of daily living and only moderate difficulties with social functioning and concentration. [*Id.*]. Moreover, she had not experienced extended episodes of decompensation. [*Id.*].

At Step Four, ALJ Mangus found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), provided that the work "does not require more than occasional stooping from waist." [TR 31]. She observed that "[m]entally, claimant can understand, remember, and carry out simple instructions and tasks, tolerate occasional public contact, and adapt to occasional, gradually introduced changes." [*Id.*]. ALJ Mangus then determined that Plaintiff was unable to perform any past relevant work. [TR 33].

ALJ Mangus then proceeded to the final step of the sequential evaluation. [TR 34-35]. At Step Five, she determined that there were a significant number of jobs in the national economy that Plaintiff could perform. [*Id.*]. ALJ Mangus based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. [*Id.*]. The VE testified that such an individual could find work as a food preparation worker (1,800 Kentucky/182,000 nationwide), kitchen helper (2,900 Kentucky/293,000 nationwide), or packer (2,200 Kentucky/172,000 nationwide). [*Id.*]. Based on the testimony of the VE, ALJ Mangus found that Plaintiff was capable of making a successful adjustment to other work. [*Id.*]. Thus, she concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from

4

November 30, 2012, the alleged onset date, through the date of the administrative decision. [*Id.*].

On June 20, 2016, the Appeals Council denied Plaintiff's request for review of ALJ Mangus's administrative decision. [TR 1-4]. Plaintiff filed the instant action on August 2, 2016. [DE 2]. Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are now ripe for review. [DE 10, 12]. Plaintiff argues that ALJ Mangus's administrative decision is not supported by substantial evidence for four reasons. First, she argues that ALJ Mangus erred at Step Two by failing to find that her hypertension was a severe impairment. [DE 10 at 19-12]. Second, she contends that ALJ Mangus erred in her assessment of her credibility at Step Four. [*Id.* at 12-14]. Third, she complains that the ALJ improperly weighed Dr. William R. Rigby's opinion at Step Four. Fourth, she insists that the ALJ relied on the VE's answer to an inappropriate hypothetical at Step Five.[2] The Court will address each of these arguments in turn.

---

[2] Plaintiff combines the third and fourth issues into one claim of error, contesting ALJ Mangus's reliance on a hypothetical that did not incorporate the limitations suggested by Dr. Rigby. The Court has separated these issues for ease of analysis. Any concerns not included in Plaintiff's Motion are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

**III.**

***A. Severe and Non-Severe Impairments***

At Step Two of the disability determination process, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Soc. Sec. Rul. 96-3p, 1996 WL 374181 at *1 (July 2, 1996). An impairment is severe if it "significantly limits an individual's physical or mental ability to perform basic work activities," which include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b).

The Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," intended to screen out totally frivolous claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Thus, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Id.* (explaining further that "an impairment can be considered not

severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process. 20 C.F.R. § 404.1520(a)(4). Because the regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2). Thus, an ALJ's failure to find that an impairment is severe does not constitute reversible error. *See also Maziarz v. Sec'y Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow her to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.").

Plaintiff complains that ALJ Mangus erred in finding that her hypertension was non-severe, pointing to several treatment notes that included high blood pressure readings. [DE 10-1 at 10-11]. However, ALJ Mangus observed that these high readings often occurred when Plaintiff was not taking her anti-hypertensive medication. [TR 28]. By contrast, "[p]rimary care notes show

7

hypertension is controlled when she takes her medication." [*Id.*]. She further noted that Plaintiff "has not required any emergency room treatment for … hypertension"[3] and that the State agency characterized her hypertension as non-severe. [TR 25, 28]. Even construing Plaintiff's claim liberally, as is required at this stage of the disability determination analysis, the Court finds that there is substantial evidence in the record to support ALJ Mangus's conclusions.

In the alternative, even if ALJ Mangus erred in concluding that Plaintiff's hypertension was a non-severe impairment, the error is harmless. ALJ Mangus found that Plaintiff suffered from a host of severe impairments, including IBS, history of gastroduodenitis, history of duodenal ulcer, dysthymia, and anxiety. [TR 25]. As a result, ALJ Mangus was obliged to continue her analysis, considering both severe and non-severe impairments in the remaining steps of the disability determination analysis. Reversal is therefore inappropriate on this ground.

### B. *Plaintiff's Credibility*

To determine Plaintiff's ability to perform past relevant work, the ALJ is responsible for "evaluating the medical evidence and the claimant's testimony to form an assessment of [his]

---

[3] Plaintiff's medical records do indicate that she received emergency treatment for abdominal pain, constipation, and rectal bleeding after the onset date. [TR 27]. Hypertension was not at issue during those visits. [*Id.*].

residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotations omitted). The RFC is an assessment of how the claimant's "impairments, and any related symptoms, such as pain, … cause physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). The RFC assessment is "based on all of the relevant medical and other evidence" in the case record, including "statements about what [the claimant] can still do that have been provided by medical sources," as well as descriptions of the claimant's limitations that have been provided by the claimant and his or her family members. 20 C.F.R. § 404.1545(a)(3).

When evaluating a claimant's symptoms, the ALJ must follow a two-step process. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996). First, he or she must consider whether there is "a medically determinable physical or mental impairment that could reasonably be expected to produce" the claimant's pain or other symptoms. *Id.* Once the existence of a medically determinable impairment is established, "the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.*

If a claimant's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination

9

"based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p). "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.*

The ALJ must then explain his or her decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." *Id.* at 248. Blanket assertions that the claimant is not believable will not suffice, nor will credibility explanations "which are not consistent with the entire record and the weight of the relevant evidence." *Id.* That being said, reviewing courts must give great weight and deference to the ALJ's credibility determination. *Id.*

Plaintiff complains that ALJ Mangus's decision to discount her credibility was not supported by substantial evidence. In support of this proposition, she cites to several aspects of the record that allegedly support her statements about the severity and persistence of her symptoms. However, as explained *supra*, this Court is not to conduct a de novo review of the ALJ's decision or reweigh the evidence. *Cutlip*, 25 F.3d at 286. Thus, it does not matter whether there is evidence to support Plaintiff's position. This Court's role is limited to determining whether ALJ

Mangus's credibility assessment was supported by substantial evidence. *Her*, 203 F.3d at 389-90.

The administrative decision includes the following assessment of Plaintiff's credibility:

> In terms of the claimant's alleged problems [with] concentration and completing tasks, getting along with others, being so nervous she can barely write a check sometimes, or spells where she forgets where she has driven, being in crowds, stopping driving for fear of wrecking, and her stomach hurting every day, she is not fully credible. Though claimant did not allege memory problems herself, most of her testimony was about perceived memory problems. In fact, claimant had reported she could pay attention "how long needed" and f[ollow] written and spoken instructions without limitations. Claimant also indicated she could handle changes, but was "not good" at handling stress and does not like being around people sometimes, she identified no fears, even though later she claim[ed] she was afraid to drive. The medical record and claimant's testimony leave no doubt her work stressed her out and caused most of the issues she has. She reported that she does not think her "nerves will let me" [work] and when "I'm in crowds my stomach starts and then I'm sick for days." Before she stopped working, she was having issues with recurrent gastritis, ulcers, and irritable bowel. Even so, there is no evidence to support that she has to use the bathroom 20 times a day due to IBS and her kidneys as she reported in Exhibit 6E, p.2, even at that time. Despite her testimony to the contrary, it would appear that her problems have improved since she stopped working because she hasn't been hospitalized and has sought little treatment for stomach or intestinal problems other than obtaining regular, maintenance medication refills and a little treatment for hemorrhoids.
>
> In terms of her alleged stomach and head pain and whole body pain, brought on by stress, reli[e]ved by being in a quiet room, that prevent her from working and attending social events, cause her to feel tired and sick all the time and not feeling like cooking or doing daily chores,

> she is partially credible. She still does some cooking not done by her mother or mother-in-law, does chores when needed, just not daily, shops for food every week or two for 30 minutes to one hour, but does not have the desire to shop for other things. While she may not be able to work "from daylight to dark doing something" like she used to, she is still able to perform most essential tasks including driving, cooking, pay bills, cleaning, laundry and mowing within reasonable limitations.
>
> …
>
> The claimant's credibility is also reduced by evidence of substance abuse, although claimant has denied it to every practitioner. I simply am not convinced claimant could have false positives on two different occasions, especially for amphetamines and barbiturates. It is reasonable that these substances exacerbated both her stomach problems and her anxiety; Dr. Samih told her these substances could worsen her blood pressure.

[TR 32-33].

Here, ALJ Mangus catalogued Plaintiff's statements at the hearing. She then noted that several aspects of the record directly contradicted Plaintiff's testimony, highlighting these discrepancies by comparing each statement against a corresponding treatment note, function report, or test score. She then explained why these inconsistencies led her to believe that Plaintiff was not fully credible. Thus, the Court concludes that ALJ Mangus's assessment of Plaintiff's credibility is supported by substantial evidence.

### C. Dr. William R. Rigby's Opinion

As explained in the previous section, the ALJ must assess a claimant's RFC by considering testimony and evaluating medical

12

evidence. *Webb*, 368 F.3d at 633. Medical sources may be classified as treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1527(c). A treating source is a "physician, psychologist, or other acceptable medical source who … has, or has had, an ongoing treatment relationship" with the claimant. *Id.* A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [his or her] case record." *Id.* If the opinion is not entitled to controlling weight, the ALJ must decide how much weight to give it by considering the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention. *Id.*

A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. *Id.* "[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

Instead, the ALJ must weigh the opinion using the same factors discussed above. *Id.* While an ALJ will likely prioritize a treating source's non-controlling opinion over a non-treating source's opinion (and a non-treating source's opinion over a non-examining source's opinion), deviation from this general approach is not a *per se* error of law. 20 C.F.R. § 404.1527(c).

In this case, ALJ Mangus offered the following assessment of Dr. William R. Rigby's opinion:

> Mentally I accord little weight to consultative examiner Dr. Rigby's marked limitations in social interactions with supervisors, friends, and the public because I find this level of limitation is not supported by the treatment evidence. Though claimant alleged and testified she did not want to go out or be around others and has daily crying spells, treating notes do not support this and show good GAF scores in the fall of 2014. It appears Dr. Raza has simply maintained her on psychotropic medications and there has been no emergency room or hospitalization for psychological symptoms. At the hearing, the claimant mostly focused on her memory problems, describing that she was so stressed out by her job that she developed anxiety and depression, which appears to be true. It appears all her stress has decreased since she stopped the high-stress job of managing several restaurants. The claimant interacted easily and appropriately with me at the hearing and there is no evidence of any difficulty interacting with others in the record. The overall weight of the evidence, including Dr. Rigby's assessment of no impairment in the ability to perform simple tasks and moderate limitations in ability to adapt and respond to normal pressures of day to day work supports the State agency residual functional capacity. Mentally, claimant can understand, remember, and carry out simple instructions and tasks, tolerate occasional public contact, and adapt to occasional, gradually introduced changes.

[TR 33].

This analysis demonstrates that ALJ Mangus carefully considered a wide variety of medical records and treatment notes. In evaluating Dr. Rigby's opinion, she appropriately classified him as a non-treating source, discussed his finding that Plaintiff had marked limitations in interacting with other people, and noted that some of Plaintiff's testimony supported his conclusions. She then pointed out several pieces of evidence that were inconsistent with Dr. Rigby's opinion, including other aspects of Plaintiff's testimony, treatment notes, test scores, and medication history. Finally, she compared Dr. Rigby's opinion and its supporting evidence against all inconsistent evidence in the record, ultimately determining that it was entitled to little weight. Because ALJ Mangus explained her reasoning in detail, providing painstaking citations to the record and summations of the evidence, the Court finds that this aspect of her analysis was supported by substantial evidence.

### D. The VE's Testimony

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779. (6th Cir. 1987). However, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

At the administrative hearing, ALJ Mangus asked the VE to assume someone with Plaintiff's age, education, work experience, and RFC, then asked whether jobs exist in the national economy for such an individual. [TR 58-61]. The VE replied in the affirmative, giving representative occupations. [*Id.*]. Based on that information, ALJ Mangus concluded that there were a significant number of jobs in the national economy that Plaintiff could perform, and thus, she was not disabled. [*Id.*]. Because ALJ Mangus's RFC assessment was supported by substantial evidence, and because ALJ Mangus incorporated those limitations that she found credible into the hypothetical question posed to the VE, the Court concludes that her reliance on the VE's answer to the hypothetical is also supported by substantial evidence.

**IV.**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiff Delisa Ann Arvin's Motion for Summary Judgment [DE 10] be, and is, hereby **DENIED**;

(2) The Commissioner of Social Security's Motion for Summary Judgment [DE 12] be, and is, hereby **AFFIRMED**; and

(3) A Judgment will issue contemporaneously with this Memorandum Opinion and Order.

This the 27th day of April, 2017.



Signed By:
*Joseph M. Hood*  JMH
Senior U.S. District Judge